UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TEMIRLAN AMATBEK UULU, | CASE NO. 2:26-cv-00774-LK |
| Petitioner, | ORDER GRANTING HABEAS PETITION |
| v. | |
| BRUCE SCOTT et al., | |
| Respondents. | |

This matter comes before the Court on Petitioner Temirlan Amatbek Uulu's Petition for Writ of Habeas Corpus. Dkt. No. 1. For the reasons described below, the Court grants the petition.[1]

## I.    BACKGROUND

Petitioner is a native of Kyrgyzstan and a citizen of Russia who is currently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 1 a 1–2; Dkt. No. 6 at 1–2. On February 23, 2023, he applied for admission to the United States at a port of entry and sought asylum. Dkt. No. 1 at 1; Dkt. No. 6 at 2. That day, the U.S. Department of Homeland Security ("DHS") issued him a Notice to Appear ("NTA"), labeling him "an arriving alien,"

---

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized by statute").

ORDER GRANTING HABEAS PETITION - 1

charging him as removable under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I), and placing him in removal proceedings under INA § 240, 8 U.S.C. § 1229a. Dkt. No. 6 at 2; Dkt. No. 5-1 at 2, 5. He was then released on parole. Dkt. No. 1 at 1; Dkt. No. 6 at 2. He was provided with an I-94 form indicating that he was part of the "DT" class of admission (which corresponds to humanitarian parole granted pursuant to 8 U.S.C. § 1182(d)(5)(A))[2] and listing an "Admit Until Date" of February 22, 2024. Dkt. No. 5-2. Petitioner avers, and Respondents[3] do not dispute, that while on parole he was given work authorization, that he had no criminal history, and that he "actively participated in his immigration proceedings and complied with all court requirements." Dkt. No. 1 at 2.

On November 19, 2025, Petitioner was driving a commercial truck in Montana and stopped for an inspection at a weigh station. Dkt. No. 5-3 at 4. A Montana state trooper, apparently noticing that the truck did not display a required International Fuel Tax Agreement decal, requested identification and conducted an immigration inspection of Petitioner. *Id.*[4] The trooper determined based on "[q]ueries in federal databases" that Petitioner "lack[ed] lawful status" and detained him in Billings, Montana. *Id.* The next day, two Border Patrol agents interviewed him. *Id.* Petitioner

---

[2] Respondents cite to a document titled "INS Class of Admission Codes," available at https://www.hplct.org/assets/uploads/files/Library%20Services/Immigration/BLOGS/INS_CLASS_of_Admissions.pdf; it is unclear who authored the document, which is hosted by the Hartford, Connecticut Public Library. *Id.* Nevertheless, it appears, and Petitioner does not dispute, that the "DT" code does indeed correspond to humanitarian parole granted pursuant to 8 U.S.C. § 1182(d)(5)(A). *See Noori v. LaRose*, 807 F. Supp. 3d 1146, 1157 (S.D. Cal. 2025).

[3] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

[4] The State Trooper acted pursuant to an amendment to Montana's stop and frisk law that was passed in April 2025, which allows a police officer to attempt to "determine the immigration status" of a person suspected of committing a crime and requires the officer to "make a report to a federal immigration agency . . . if a person stopped . . . is not lawfully present in the United States." *Id.*; *see* Mont. Code. Ann. § 46-5-401(3).

ORDER GRANTING HABEAS PETITION - 2

indicated that he was a citizen of Russia and had a work authorization card; "[b]ased on this admission, [he] was placed under arrest" and transported to the Malta, Montana Border Patrol station where federal agents conducted a follow-up interview. *Id.* DHS records indicate that during the interviews, Petitioner "provided no evidence of lawful entry or presence in the United States," though he did claim "fear of returning to Russia and/or Krygyzstan [sic] because he will be sent to prison or to fight in the war with Ukraine." *Id.* DHS records of his arrest on November 20, 2025 list his "Status at Entry" as "Refugee," *id.* at 2, and note that he had "paperwork for a court hearing on August 12, 2026" in Los Angeles, *id.* at 4, but contain no mention of his parole or its revocation, *see generally* Dkt. No. 5-3.

Two weeks later, Petitioner was transferred to the NWIPC. Dkt. No. 6 at 2. In February, he appeared before an Immigration Judge ("IJ") for a merits hearing. *Id.* The IJ denied his requests for asylum, withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and withholding or deferral of removal under the Convention Against Torture, and ordered him removed to Kyrgyzstan or, alternatively, Russia. *Id.*; Dkt. No. 5-4. On March 11, 2026, Petitioner filed an appeal of the IJ's denials to the Board of Immigration Appeals ("BIA"); his appeal remains pending. Dkt. No. 6 at 3.

On March 6, 2026, Petitioner, through counsel, filed a petition for writ of habeas corpus. Dkt. No. 1. Respondents filed their return in opposition to the petition, Dkt. No. 4, and Petitioner filed a reply, Dkt. No. 7.

## II.    DISCUSSION

Petitioner asserts that his re-detention violates the Due Process Clause of the Fifth Amendment because Respondents detained him "without any individualized custody determination" and "continue[] to detain him without providing any meaningful review of his custody status." Dkt. No. 1 at 5–6. He also asserts that Respondents have "failed to meaningfully

ORDER GRANTING HABEAS PETITION - 3

exercise" their authority to parole arriving noncitizens under 8 U.S.C. § 1182(d)(5)(A) because he has no criminal history, is not a danger to the community, and complied with immigration requirements, and because Respondents have not provided any explanation as to why his parole was revoked or why continued detention is necessary. *Id.* at 6–7. He contends that the "absence of any individualized custody determination or meaningful consideration of parole renders [his] detention arbitrary." *Id.* He seeks an order granting him release, or alternatively, granting him release "on reasonable bond." *Id.* at 8–9.

## A.     Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas*, 533 U.S. at 687.

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful,

ORDER GRANTING HABEAS PETITION - 4

unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B.    Petitioner Has Established a Due Process Violation**

   1.    <u>Applicability of the Due Process Clause</u>

Like many petitions before the Court, Petitioner's petition pays minimal attention to the statute to which he is subject, and instead essentially insists that due process demands the same procedures no matter which statute applies. *See, e.g.*, Dkt. No. 1 at 4–6. But the Ninth Circuit has rejected such a proposition, and this Court does too. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). The applicable statute matters because the constitutional process required is not necessarily the same for "different statutory provision[s] with [their] own procedural safeguards in place[.]" *Id.*; *see, e.g.*, *id.* at 1203 (because "§ 1226(a) provides substantially different procedures than the provisions [the court had] examined in the past," the court could not accept petitioner's "suggestion that [the court's decisions regarding other detention provisions] mandate[d] the same procedural relief in this case"); *Demore*, 538 U.S. at 529 n.11 (in response to a dissent "suggesti[ng] that [noncitizens] are entitled to an immediate hearing," pointing to *Zadvydas*, in which the Supreme Court "permit[ed] [noncitizens] to be detained for several months prior to such a hearing").

As Respondents argue, Dkt. No. 4 at 4, and as Petitioner effectively concedes, Dkt. No. 1 at 2, the statutory provision applicable here is Section 1225(b). For the reasons set forth in the Court's order in *Dieng v. Hermosillo*, 2:26-cv-00190-LK, 2026 WL 411857, at *3–5 (W.D. Wash. Feb. 13, 2026), the Court finds that the Due Process Clause is applicable in this case and adopts the analysis from that order. The Court also reiterates that humanitarian parole under Section

ORDER GRANTING HABEAS PETITION - 5

1225(b) can establish the same kinds of liberty interests described in *Morrissey v. Brewer*, 408 U.S. 471 (1972). *Flores Torres v. Hermosillo*, No. 2:25-CV-02687-LK, 2026 WL 145715, at *5 (W.D. Wash. Jan. 20, 2026) (collecting cases). Here, Petitioner has established such an interest. He "lived and worked in the community pursuant to valid employment authorization" for nearly three years prior to his detention. Dkt. No. 7 at 2; *see also* Dkt. No. 5-3 at 4 (noting he has lived and worked in Los Angeles since his entry in 2023).

As noted above, Petitioner does not discuss the adequacy (or lack thereof) of the procedural safeguards in Section 1225(b), and absent any argument to the contrary, the Court assumes that these safeguards suffice for due process purposes. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) ("To put it plainly, courts call balls and strikes; they don't get a turn at bat." (citation modified)); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). Because "the applicable statutory process shapes [the petitioner's] procedural due-process rights," *Doe v. Andrews*, No. 1:25-CV-00333-JLT-HBK (HC), 2025 WL 3280777, at *7 (E.D. Cal. Nov. 25, 2025) (quoting *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D.N.M. 2020)), the Court addresses the process required here.

2.      The Process Required

Section 1182 provides that parole may be granted "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A). The implementing regulations include another requirement for parole: the noncitizen must "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). In other words, if a noncitizen has been granted parole, it means that a DHS official with authority decided that there were either "urgent humanitarian reasons" or "significant public benefit" justifying the parole of that individual, and that the individual did not pose a security or flight risk.

ORDER GRANTING HABEAS PETITION - 6

Parole automatically terminates if the noncitizen departs from the United States or "at the expiration of the time for which parole was authorized," and "no written notice shall be required" for automatic termination. 8 C.F.R. § 212.5(e)(1). Otherwise, for parole to be terminated, (1) "the purpose for which parole was authorized" must have been accomplished or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States"; and (2) written notice must be provided to the noncitizen. 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled[.]").

Once a noncitizen's parole has terminated—either automatically or on notice—"any order of exclusion, deportation, or removal previously entered shall be executed." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 C.F.R. § 212.5(e)(1) ("[T]he [noncitizen] shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required."). "If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the [noncitizen] shall again be released on parole unless in the opinion of [a DHS official with authority] the public interest requires that the [noncitizen] be continued in custody." 8 C.F.R. § 212.5(e)(2)(i).

3.      The Government Failed to Follow the Required Process

Petitioner argues that Respondents' revocation of his parole is "arbitrary" because Respondents failed to provide "any individualized custody determination or meaningful consideration of parole[.]" Dkt. No. 1 at 7. Respondents contend that Petitioner's parole terminated automatically in February 2024, *see* 8 C.F.R. § 212.5(e)(1), so under 8 U.S.C. § 1182(d)(5)(A), he "should be taken back into custody and dealt with as any other applicant for admission, which is what happened here." Dkt. No. 4 at 4–5.

ORDER GRANTING HABEAS PETITION - 7

The Court notes first that the relatively bare record before it makes it unclear whether Petitioner's parole expired or was instead extended. Respondents provide a single page of documentation suggesting that his parole expired in February 2024, Dkt. No. 5-2, but do not explain why they did not detain Petitioner for over a year and a half following that expiration. Petitioner avers, and Respondents to not dispute, that he "complied with immigration authorities and appeared for required hearings." Dkt. No. 1 at 3. And DHS's records of his November 2025 arrest note that Petitioner had "paperwork for a court hearing on August 12, 2026" at an immigration court in Los Angeles. Dkt. No. 5-3 at 4. It thus appears possible that Respondents had extended Petitioner's parole; if this is the case, Respondents' revocation of his parole without written notice does not comport with the requirements for discretionary revocation of parole at 8 C.F.R. § 212.5(e)(2)(i). *See, e.g., Fuenmayor Rodriguez*, 2026 WL 799363 at *5; *Albornoz*, 2026 WL 444983 at *4.

Even if Petitioner's parole expired automatically, as Respondents contend, Dkt. No. 4 at 5, Respondents still failed to follow federal law in re-detaining him. Petitioner's parole expired more than two years ago, and no order of exclusion, deportation, or removal has been executed in that time. Furthermore, Respondents have put forth no evidence that a DHS official with requisite authority determined that "the public interest requires that [Petitioner] be continued in custody." 8 C.F.R. § 212.5(e)(2)(i). Thus, if Petitioner's parole expired, the government violated 8 C.F.R. § 212.5(e)(2)(i) by failing to provide the process provided therein. *See Torres v. Noem*, No. C25-2697JLR, 2026 WL 234076, at *4 (W.D. Wash. Jan. 29, 2026) (finding that by terminating the petitioner's parole without following the regulatory and statutory requirements, "DHS failed to provide [petitioner] with the minimum process due"); *Gabriel v. Bondi*, No. 25-CV-4298 (KMM/EMB), 2025 WL 3443584, at *6 (D. Minn. Dec. 1, 2025) ("Without any suggestion that such a determination [as that required under the statute and regulation] occurred, Respondents

ORDER GRANTING HABEAS PETITION - 8

could not have complied with § 1182(d)(5)(A) and Part 212.5(e)(2)(i) in revoking Petitioner's parole," and accordingly, "the revocation, and[ ] . . . Petitioner's detention[ ] is unlawful.").

4.    *Mathews* Analysis

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Courts analyze three factors to determine whether an administrative procedure provides due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that Mathews' three-part test applies in "the immigration detention context," 53 F.4th 1189, 1206–07 (9th Cir. 2022), and district courts have applied the *Mathews* test in that context, *see, e.g., Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

Respondents suggest that "analysis of the reasonableness of continued detention in this circumstance can be considered pursuant to the multi-factor analysis in *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019)." Dkt. No. 4 at 5. The court in *Banda* declined to apply *Mathews* because it was not analyzing "the question of 'whether the administrative procedures provided . . . are constitutionally sufficient." 385 F. Supp. at 1106 (quoting *Mathews*, 424 U.S. at 334). Instead, it was resolving "the more fundamental issue of whether any procedure—such as a bond hearing—must be provided," so a case-specific, multi-factor analysis was appropriate. *Id.* at

ORDER GRANTING HABEAS PETITION - 9

1106–07. Here, in contrast, the relevant question is whether the administrative procedures provided to re-detain Petitioner were constitutionally sufficient, not whether any procedure whatsoever must be provided. The Court therefore declines to adopt the analytical framework suggested by Respondents and will instead apply *Mathews*.

With respect to the first factor, it is undisputed that Petitioner has a liberty interest in being free from imprisonment. *Zadvydas*, 533 U.S. at 690. His liberty interest "is valuable and must be seen as within the protection of the [Due Process clause]" such that "its termination calls for some orderly process," *Morrissey*, 408 U.S. at 482, as provided under 8 C.F.R. § 212.5(e)(2). A "petitioner's liberty interest [does] not expire along with his parole." *Quiroga-Chaparro v. Warden of the Golden State Annex Det. Facility*, No. 1:25-CV-1731 AC, 2025 WL 3771473, at *4 (E.D. Cal. Dec. 31, 2025) (citation modified). Because Petitioner had an interest in his liberty and had been released, "liv[ing] and work[ing] in the community pursuant to valid employment authorization" for nearly three years prior to his detention, Dkt. No. 7 at 2; *see also* Dkt. No. 5-3 at 4, this factor favors Petitioner.

Turning to the second factor, for the reasons stated in this Court's order in *Dieng*, due process at least requires that (1) the government justify the basis for re-detention, as prescribed by the statute and its implementing regulations, and (2) Petitioner be given "the opportunity to be heard" with respect to the government's basis for re-detention under the applicable statutory and regulatory framework "at a meaningful time and in a meaningful manner." *Dieng*, 2026 WL 411857, at *8. Here, as discussed above, the government did not follow the procedures required by its own regulations, regardless of whether Petitioner's parole was automatically terminated. The risk of erroneous deprivation is significant where the government fails to follow its own

procedures, thus depriving the noncitizen of process due prior to being detained.[5] "[T]he additional procedural safeguards identified in 8 C.F.R. § 212.5 are not only valuable for preventing the erroneous deprivation of an important interest, they are required by the Section 1225 statutory scheme[.]" *O.F.B.*, 2025 WL 3277677, at *7. This factor favors Petitioner.

With respect to the last factor, "the government's interest in efficient administration of the immigration laws at the border is not impermissibly burdened by affording the process laid out in 8 C.F.R. § 212.5 because it is required to follow its own regulations." *O.F.B.*, 2025 WL 3277677, at *7 (citation modified). Therefore, this factor too weighs in favor of Petitioner.

Under *Mathews*, the Court finds that Respondents failed to provide Petitioner with the procedures due to him under the Due Process Clause, and accordingly, his detention is unlawful. *O.F.B.*, 810 F. Supp. 3d at 404 ("Under these circumstances, the applicable regulatory provision requires that Petitioner 'shall again be released on parole' unless ICE has made an individualized determination that 'the public interest requires that the alien be continued in custody.' . . . Here, because no such determination has been made, Petitioner is being detained in violation of the agency's own regulations."); *Telenchana v. Hermosillo*, No. 2:26-CV-00363-GJL, 2026 WL 696806, at *7 (W.D. Wash. Mar. 12, 2026) ("[U]nless detention is required for the timely removal

---

[5] *See Lopez v. Noem*, No. CV-GLR-25-3662, 2025 WL 3496195, at *5 (D. Md. Dec. 5, 2025) (finding that there was a high risk of erroneous deprivation because "the Government's failure to comply with its own agency regulations necessarily deprive[d] [petitioner] of the procedural process due her, rendering her current detention unlawful"); *J.L.R.P. v. Wofford*, No. 1:25-CV-01464-KES-SKO (HC), 2025 WL 3190589, at *9 (E.D. Cal. Nov. 14, 2025) (finding that the risk of erroneous deprivation was high where "ICE revoked petitioner's release on the grounds that his removal was reasonably foreseeable, but it did not provide petitioner the process required by its own regulations, it forced petitioner to file a habeas petition to obtain relief, and [it] has failed to identify any evidence that petitioner's removal was actually reasonably foreseeable at any point"); *Salazar v. Casey*, No. 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025) ("[T]he risk of an erroneous deprivation of [petitioner's] interest [in remaining out of custody pursuant to her humanitarian parole] is high as Petitioner's parole was revoked without providing her a reason for revocation or giving her an opportunity to be heard"); *Munoz Materano v. Arteta*, No. 25-CV-6137-ER, 2025 WL 2630826, at *14 (S.D.N.Y. Sept. 12, 2025) (finding a risk of erroneous deprivation where "Respondents provide[d] no indication that an individualized determination was made as to the revocation of [Petitioner's] parole; nor d[id] they articulate, even now, either that the purpose for which [Petitioner's] parole was authorized has been accomplished, []or that neither humanitarian reasons nor public benefit warrants his continued presence in the United States.").

of a noncitizen, continued detention following release on parole must be supported by individualized assessment by an authorized DHS official. Otherwise, implementing regulations require that a noncitizen be returned to humanitarian parole." (citations omitted)).

### III.    CONCLUSION

For the reasons stated above, the petition for the writ of habeas corpus, Dkt. No. 1, is GRANTED, and the Court ORDERS as follows:

1.    Respondents shall immediately release Petitioner from custody subject to the conditions of his most recent parole agreement;

2.    The parties shall file a Joint Status Report by March 31, 2026, confirming that Petitioner has been released;

3.    Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the government in immigration habeas actions); *Michelin v. Warden Moshannon Valley Corr. Ctr.*, No. 24-2990, 2026 WL 263483, at *13 (3d Cir. Feb. 2, 2026) ("The EAJA authorizes an award of attorneys' fees and costs to the prevailing party 'in any civil action (other than cases sounding in tort)' brought by or against the United States if the Government's position was not 'substantially justified.' . . . [T]his provision clearly covers petitions for writs of habeas corpus from immigration detention[.]"); *Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a nonresident [noncitizen]" in the immigration context). The Court emphasizes that time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v.*

*Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 30th day of March, 2026.

Lauren King
United States District Judge

ORDER GRANTING HABEAS PETITION - 13